UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAYEZ IMAD HAIDAR,

      Petitioner,                      Civil Case No. 20-12546
                                                Honorable Linda V. Parker

v.

WILLIS CHAPMAN,

      Respondent.
_____/

## OPINION AND ORDER DISMISSING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Mayez Imad Haidar ("Petitioner") is currently under parole supervision through the Lincoln Park Parole Office in Lincoln Park, Michigan.[1]  Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the revocation of his probation by the Wayne County Circuit Court for embezzlement of more than $100,000.00 under Mich. Comp. Laws § 750.174(7). For the reasons that follow, the Court is denying the petition for a writ of habeas corpus.

---

[1] The Court obtained this information from the Michigan Department of Corrections' Offender Tracking Information System (OTIS), of which this Court is permitted to take judicial notice.  *See Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821, n.3 (E.D. Mich. 2004).

## I. Background

Petitioner pleaded guilty to embezzlement of over $ 100,000.00.  On

September 16, 2013, Petitioner was sentenced to 5 years of probation and ordered

to make restitution in the amount of $100,918,00.  (ECF No. 6-4 at Pg ID 338–39.)

On May 3, 2018, Petitioner pleaded guilty to violating the terms of his probation.

Petitioner acknowledged that one of the terms of his probation was to refrain from

engaging in any further criminal activity and admitted that he had since been

convicted of two misdemeanor retail fraud charges, and has an outstanding balance

continued of $97,740.00 in restitution.  (ECF No. 6-4 at Pg ID 334–36.)  The trial

court judge ordered a pre-sentence report to be prepared addressing why Petitioner

still owed so much restitution and any reasons as to why it has not been paid.

Petitioner acknowledged having a job, so the court ordered petitioner to bring the

last two years of his tax returns and his last three paycheck stubs to the next

hearing.  (*Id.* at Pg ID 336–40.)

Sentencing was scheduled for September 14, 2018.  At the hearing,

Petitioner informed the judge that he had brought $5,000.00 to court, which he had

borrowed from his aunt.  Petitioner, however, had only paid $2,000.00 because

someone in the probation office told him to pay $2,000.00 immediately.  The judge

ordered him to pay the additional $3,000.00, ECF No. 6-5 at Pg ID 345-46, and

noted that Petitioner's co-defendant had been diligent in paying his portion of the

2

restitution, even though petitioner had been the leader of the embezzlement operation.  The judge indicated that unlike his co-defendant, who could probably do no better than work a "menial job," Petitioner had skills that could be put to "good use."  (*Id.* at Pg ID 347–48.)  The Court instructed Petitioner to make a "substantial payment" towards the $97,000.00 in restitution, commenting that $2,000.00 was "a drop in the bucket."  (*Id.* at Pg ID 348.)  In response to the judge's inquiry as to how he came to court, Petitioner said he drove his mother's 2006 Range Rover.  The judge observed that the Internet indicated that this type of vehicle was valued at anywhere between $41,000.00 and $90,000.00.  (*Id.* at Pg ID 348–49.)

The judge extended the period of probation for two weeks and ordered petitioner to "borrow five thousand dollars from every relative," because he was either going to have to make a substantial payment towards the restitution or face prison time.  (*Id.* at Pg ID 349.)  The judge advised petitioner to bring $15,000.00 to $20,000.00 in restitution when he returned to court, opining that Petitioner could have easily paid much of the restitution over the prior 59 months of probation. When asked if he was still gambling, Petitioner acknowledged that he had continued gambling and had lost $70,000.00–80,000.00.  (*Id.* at Pg ID 350.)  The judge indicated that Petitioner had paid about $100.00 a month in restitution in

2018, had missed making payments for several months, and during the first couple of years, he only paid "10 dollars here and there." (*Id.* at Pg ID 351–53.)

Petitioner returned to court on September 28, 2018. Petitioner's counsel informed the judge that Petitioner brought $3,000.00 to court and paid that amount towards restitution. (ECF No. 6-6 at Pg ID 359.) The judge mentioned that Petitioner had brought $5,000.00 with him to the last hearing but had only paid $2,000.00 prior to the hearing. Petitioner was told to pay the additional $3,000.00 after the hearing. The probation officer advised the judge that Petitioner never made this payment, although he promised to do so. Petitioner explained that his cousin now had the other $3,000.00 with him at that hearing. When asked why he didn't pay the full $5,000.00 at the last hearing as required, Petitioner explained that he didn't know whether he should make the full payment or come to court first and get an order from the judge [to complete the payment]. The judge described Petitioner's explanation for his failure to pay the full $5,000.00 at the last hearing as "disingenuousness." (*Id.* at Pg ID 360–63.) Petitioner's defense counsel noted that he had made numerous restitution payments in the amount of $100.00. Counsel also claimed that Judge Hathaway, who had sentenced Petitioner, told him to "just pay what you can." (*Id*. at Pg ID 363–64.) Counsel also noted that Petitioner's embezzlement conviction arose because of his serious gambling problem, but that he was now working two jobs. (*Id.* at Pg ID 364, 368.) In

4

response to the judge's question, Petitioner indicated that he had three cars: a Cadillac that his brother plated in Petitioner's name; a Honda, plated to Petitioner's name by his father; and his mom's Range Rover. (*Id.* at Pg ID 365–66.)

The judge noted that the pre-sentence report indicated that on September 22, 2015, Petitioner violated the terms of his probation by failing to obtain and maintain employment, failing to enroll in an alternative work force ("AWF") program, and failing to pay restitution. The court previously continued Petitioner's probation and ordered him to perform 155 hours of community service, which Petitioner failed to do. Petitioner again violated his probation on August 11, 2017, which had again been continued. The judge indicated that Petitioner was before her again for violating the terms of his probation, in part, by his failing "to make honest and reasonable payments" and his "[F]ailure to maintain employment." (*Id.* at Pg ID 370.) The judge also noted that several probation violation hearings were adjourned because Petitioner was in jail as he was "still out in the streets breaking the law." (*Id.* at Pg ID 369–71). The judge then said the following:

> So the Court has considered your employment status. The Court has considered your earning ability. Your financial resources and the wilfulness of your continued failure to pay. The Court concludes that Mr. Haidar had and still has the ability to pay more, significantly more, than the amount of restitution that he had paid during the five years.

(*Id.* at Pg ID 371.)

The judge concluded:

In addition to your blatant disregard to return money owed to others since being placed on probation, you have been found guilty of not once, not two, but six additional misdemeanors since being placed on probation. Four of those are theft related. One is assaultive and disturbing the peace I believe was the final disposition. So disturbing the peace the Court can't (inaudible) whether it's assaultive or not. And I wonder if this report generated in June of this year does not reflect why he was in Macomb County Jail, because that was recently adjourned. So since you've been on probation you've committed six misdemeanors. Again, underscoring the failure of probationary rules and regulation to curb your behavior. Underscoring the failure of probationary rule to change your mindset about your obligation to live your life in a manner and fashion that does not harm others.

(*Id.* at Pg ID 372–73).

The judge then sentenced Petitioner to five to twenty years in prison, based on his minimum payment towards restitution and his six misdemeanor convictions while on probation.  (*Id.* at Pg ID 375–76.)  Petitioner's probation revocation and sentence were affirmed on appeal.  *See  People v. Haidar*, No. 347767 (Mich. Ct. App. June 25, 2019); *lv. den.* 504 Mich. 1001, 934 N.W.2d 234 (2019).  Petitioner now seeks habeas relief on the following grounds:

I.   The trial court erred in revoking petitioner's probation and sentencing him to a prison term for failure to pay the full restitution without considering petitioner's employment status, earning ability, and financial resources.

II.  Petitioner's sentence of five to twenty years must be vacated where the circuit court did not have jurisdiction to revoke petitioner's probation and sentence him to prison.

(ECF No. 1 at Pg ID 10, 17.)

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

The Court discusses Petitioner's claims together.  In his first claim, Petitioner alleges that the judge erred in revoking his probation and sentencing him to prison without first considering his employment status, his ability to pay, and his other financial resources.  In his second claim, Petitioner argues that the Wayne County Circuit Court did not have jurisdiction to revoke his probation and sentence him to prison, because his probation was originally set to expire on September 16, 2018, and the trial court did not have the power to extend the probation.[2]

Taking petitioner's jurisdictional claim first, this Court is without power to grant relief on this claim because it is non-cognizable on habeas review.  The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts.  *See Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).  The Sixth Circuit has noted that "[a] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).  Petitioner's claim that the Wayne County Circuit Court lost jurisdiction to revoke his probation is non-cognizable on federal habeas review, because it involves a matter of state law.  *See Foster v. Watts*, 596

---

[2] Petitioner's release on parole does not moot his probation revocation claims.  *See, e.g.*, *Gunsolus v. Gagnon*, 454 F.2d 416, 418 (7th Cir. 1971), *aff'd in part, rev'd in part on other grds, sub nom. Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

F. App'x 614, 616 (10th Cir. 2014); *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986).  Moreover,  the Michigan Court of Appeals decision that Petitioner's jurisdiction challenge is meritless, and as such, is not "contrary to" or "an unreasonable application of, clearly established Federal law."  *See* 28 U.S.C. § 2254(d)(1); *see also* (ECF No. 1 at Pg ID 38; ECF No. 6-7 at Pg ID 402-403.) Petitioner is not entitled to relief on his second claim.

Petitioner's primary claim is that the judge erred in revoking his probation without first considering his financial and employment status and his ability to make restitution.  Petitioner claims that the judge's decision to revoke probation penalized petitioner for his impoverished status.  A sentencing court cannot revoke a defendant's probation for failing to pay a fine and restitution, absent evidence and findings by the judge "that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate."  *Bearden v. Georgia*, 461 U.S. 660, 665 (1983).  The Supreme Court noted that "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it."  *Id.* at 667–68.  The Supreme Court went on to hold:

> [I]n revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could

> not pay despite sufficient bona fide efforts to acquire the resources to
> do so, the court must consider alternate measures of punishment other
> than imprisonment. Only if alternate measures are not adequate to meet
> the State's interests in punishment and deterrence may the court
> imprison a probationer who has made sufficient bona fide efforts to pay.
> To do otherwise would deprive the probationer of his conditional
> freedom simply because, through no fault of his own, he cannot pay the
> fine. Such a deprivation would be contrary to the fundamental fairness
> required by the Fourteenth Amendment.

*Bearden*, 461 U.S. at 672–73.

Petitioner is not entitled to relief on his claim for several reasons.  First, the judge inquired extensively about Petitioner's past efforts to make restitution, his employment history, his ownership of other assets that could have been sold to pay off the restitution, and petitioner's gambling habit, in which petitioner admitted to losing between $70,000.00 and $80,000.00, which could have been applied to the restitution.  The judge noted that petitioner had only paid minimal amounts towards the restitution amount.   Furthermore, the judge gave petitioner additional opportunities to obtain more money to make restitution.  In light of Petitioner's failure to pay even nominal amounts of money toward restitution, his admissions that he had no excuse for not paying, Petitioner's concession that he lost a significant amount of money gambling, the assets at his disposal, and his "disingenuous" responses when confronted with his lack of payment, the trial judge reasonably concluded that Petitioner had the ability to pay significantly more restitution than he had paid during the five years of probation and that he had not

10

made a bona fide effort to pay off the restitution.  There was sufficient evidence regarding Petitioner's lack of effort to pay off the restitution amount.  The judge's decision to revoke petitioner's probation based on his non-compliance with the restitution order was neither an unreasonable determination of the facts in this case, *see, e.g., Walmsley v. Marshall*, 220 F. App'x 578, 581 (9th Cir. 2007), nor a violation of the Constitution.  *See e.g., Green v. Abrams*, 984 F.2d 41, 46 (2d Cir. 1993). Thus, the Michigan Court of Appeals' decision to deny relief on this claim did not amount to an unreasonable application of clearly established federal law to warrant granting Petitioner's habeas petition.  *See* 28 U.S.C. § 2254(d)(2); *see also* (ECF No. 6-5 at Pg ID 350 (denying Petitioner's leave to appeal is for lack of merit in the grounds presented.").)

Petitioner's claim also fails because his probation was not revoked solely based on his failure to make restitution but also—and more importantly—because he was convicted of six misdemeanors while on probation.  Although the judge considered Petitioner's failure to make significant progress towards paying restitution, the record shows that the judge also considered his other conduct while on probation, particularly petitioner's six new convictions.  *See, e.g., United States v. Nelson*, 760 F. App'x 708, 717 (11th Cir. 2019).  Petitioner does not deny that he was convicted of these six misdemeanor charges while on probation and that this was a violation of his probation conditions.  By failing to challenge this other

violation of his probation, petitioner is unable to show that he was prejudiced by the judge's decision to revoke his probation. *See Walmsley*, 220 F. App'x at 581. Petitioner is not entitled to relief on his first claim. Accordingly, for the aforementioned reasons, the Michigan Court of Appeals' decision denying relief on this claim was not contrary to or an unreasonable application of clearly established federal law.

## IV. Conclusion

The petition for a writ of habeas corpus is denied with prejudice. The Court also denies a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court denies petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal.  *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE** and a Certificate of Appealability is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

**SO ORDERED.**

s/ Linda V. Parker_____
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: June 8, 2023

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, June 8, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan_____
Case Manager

13